### KENNEDY et ux. v. MISSOURI PAC. R. CO. (ROY O. MARTIN LUMBER CO., Inc., Intervener).

### No. 4377.

Court of Appeal of Louisiana. Second Circuit.

Feb. 6, 1933.

S. P. Jones and Franklin Jones, both of Marshall, Tex., and W. C. Roberts, of Alexandria, for appellants.

Hawthorn, Stafford & Pitts, of Alexandria, and Hudson, Potts & Bernstein, of Monroe, for appellee.

White, Holloman & White, of Alexandria, for intervener.

MILLS, J.

The parents of Roy Kennedy, an 18 year old negro, bring this suit to recover of defendant $40,000 for the death of their son which occurred on the night of August 11–12, 1928, in the lumber yard of the Roy O. Martin Lumber Company at Alexandria.

Plaintiffs' petition alleges that deceased was employed on the night of his death as a night watchman to perform the usual duties pertaining to that position. They required him to pass over an industrial track in the lumber yard owned by defendant railway company and over which it infrequently operated its cars and engines. At about midnight on the night of his injury, in the course of his work, Kennedy attempted to pass through the vacant space between two cars on the track when, without warning or signal of any kind, the leading car of these two was struck by a string of cars pushed by an engine operated by defendant. Deceased was caught and crushed so severely that he died six hours after the accident.

It is alleged there was no light or signal device on the leading car; no employee was acting as a lookout on said car; no signal whatever of its approach was given. This was in violation of three rules of said company: First, when cars are pushed by an engine at night a white light must be displayed on the leading car; second, a trainman must be in a conspicuous place on said car; and, third, cars must not be moved at night until all persons working in and about the cars have been warned. Though defendant's train crew all knew that a night watchman was employed about the yard, they failed to warn him of the movement of the cars.

In the first alternative, plaintiffs allege that, if deceased was not struck by a car so pushed, he was struck by a car or engine which itself was struck by cars so negligently pushed and propelled against him.

In the second alternative it is pleaded that, if a standing car was so struck and propelled against him, it was negligently done, because the employees of defendant company did not and could not see whether or not the tracks were clear ahead of the car so propelled.

Defendant railway company answered, admitting the injury and death of Roy Kennedy, but denying that it occurred because of any fault of theirs. They admit the existence and force of the rules set out in full in an amended petition, but deny that they apply to the facts in the present case, claiming that, so far as applicable, they were fully observed.

They further pleaded, in the alternative, should they be found negligent, which is denied, the accident was caused and contributed to by the negligence of deceased, a night watchman, in discarding his lantern, and without apparent reason, walking upon the track upon which switching operations were clearly observable and accompanied by the usual noise and signals incidental to such work.

The Roy O. Martin Lumber Company, Incorporated, intervenes, asking that, in the event plaintiffs recover, they be reimbursed out of the amount allowed for any workmen's compensation which might be recovered from them.

The main track of the Missouri Pacific, at a point approximately 350 feet east of the mill building of the R. O. Martin Lumber Company, runs north and south. At this point a spur track diverges to the west in a broad semicircular curve around to the mill, a distance around the track of about 500 feet. This spur is on the premises of the lumber company used as a lumber yard, is within the yard limits of the railroad company, and is used not only for the business of the mill, but also by the railroad company for storing and switching cars.

About midnight of August 11–12, 1928, a switch engine of defendant company, manned by an engineer and fireman, an engine foreman, a switchman, and a helper, the last three equipped with lighted lanterns, backed onto this spur track to switch out cars placed on the track for the service of the mill. The engine was fitted out with brilliant electric headlights on both the front and rear. The cars to be moved were all gondolas or half box cars, high enough to shut off the view of a man standing on the ground, but not high enough to interfere with the headlight which

cast its beams out into the night over them. Almost immediately after leaving the main line, the switch engine coupled onto a loaded car. Engine and car then backed down the track toward the mill until it came to a string of five unloaded cars, the head or nearest one of which was about 200 feet from the mill, and between a large pile of logs on the east or left-hand side as the engine was traveling, and a sand and gravel pile on the west. The engine coupled on to this car and pulled it forward a short distance for the purpose of clearing the track of any sand or gravel that might be on it. This done, the engine, pushing the two attached cars, again backed up and coupled onto the next of the string. At this time Wyatt, the engine foreman, was on the ground preceding the moving, but not the standing, cars, with his lighted lantern. Brumley, the switchman, was just behind him, also with a lighted lantern. Petty, the helper, also with his lantern, was back near the engine relaying signals. All three of these men were on the east or inside of the curve, being the same side the mill building was on. Petty's position back toward the engine was made necessary because the pile of logs hid the engine from Wyatt and Brumley.

Wyatt, followed by Brumley, having coupled the two cars to the next of the string, was moving ahead observing the track to see that it was clear to see if the cars were empty. He had proceeded several car lengths when he heard groans from up ahead. He and Brumley went forward to find the body of Roy Kennedy lying in a pool of blood, at the head of the last empty car, opposite an opening of 3 or 4 feet, between it and the car ahead. Kennedy was lying off the track on the east side about 4 feet from the overhang of the car. The front part of his left hip was badly mashed, the bone broken, and the flesh and ligaments torn away. Six hours later he died of shock and loss of blood. A spot of blood was found on the drawbar of the car toward the engine from the opening.

It was Saturday night. The plant had been shut down since noon. No work was being done; no mill machinery was running; no mill employees were on the yard except Kennedy. There was no moon; the stars were shining. No noises disturbed the nocturnal peace except those made by the movement of the switch engine and cars.

Kennedy, an 18 year old negro, had worked about the yard for the lumber company about a year and a half. He had not before this night acted as night watchman. The day of the accident the regular night watchman informed the manager he could not work that night. Others refusing for various reasons, the job fell to Kennedy. The duties were those usual to the position, except that he was instructed to keep special watch over some material across the track from the mill.

He was furnished with a lantern and a clock registering fifteen stations at various points about the premises which he was required to make hourly.

When found injured beside the track, he had with him neither the lantern nor the clock. They were found later hanging up in the boiler room adjoining the mill, the lantern burning.

Kennedy was too badly hurt to talk much. Brumley and Petty heard him say he went across the track to get some dry wood—why on an August night is not explained. Wyatt claims he stated that he was hurt trying to pass behind the cars. Policeman Deaver says his statement was that he was hurt trying to get through the train. Outside of these statements, where he had been and why, and the exact way in which he was hurt, is pure conjecture. Plaintiffs' theory is that he went across the track to look after the machinery that he had been told to watch.

Clem Cole, the regular night watchman, testifies that when on duty at night he could hear the train switching when anywhere near the location of the accident; that he could see the lights and hear the impact of coupling cars.

The three company rules that defendant's train crew are charged with violating are:

(1) "When cars are pushed by an engine, except when shifting or making up trains in yards, a white light must be displayed on the front of the leading car by night."

(2) "When cars are pushed by an engine, except when shifting or making up trains in yards, a trainman must take a conspicuous position on the leading car."

(3) "Cars on industry, tram or freight house tracks must not be moved until it is certain that all running boards, all tank couplings, elevator spouts and similar connections are removed and clear, and that all persons working in or about the cars have been warned."

█ █ As to rule No. 1, the engine and crew were engaged in the shifting of cars and making up of a train, and we think were in a yard within the meaning of the rule. Furthermore, a white light on the leading moving car would have served as no warning to the injured man who was not struck by one of the cars being pushed but by one several car lengths away moved in the process of coupling. We cannot see where, if violated, any infraction of rule No. 1 would have been a proximate cause of the accident.

The same reasoning applies to rule No. 2.

█ The third rule as to clearing connections and warning persons working about the cars does not apply. There were no connections and no one working about the cars to the knowledge of the train crew. It would not be reasonable to require the engine foreman to hunt all over the yards for the night

watchman to warn him of a switching operation.

Plaintiffs' contention is that Kennedy could not see the trainmen with their lanterns because he was on the opposite side of the track from them with the cars between; that he could not see the headlight because the engine was on a curve, throwing the beam of light to the west or bow side of the track. But this is the side he was coming from. With lights thus on both sides of the track, we cannot believe that he failed to see any of them or to hear any of the noises of the engine and cars switching within 200 feet of him. The prime quality in a watchman is watchfulness. How he could expect to catch a stealthy thief when he could not detect a train approaching under such circumstances we do not see. Seeing the train, from his experience of a year and a half about the yard, he is bound to have known that this engine was engaged in the usual switching operations. Knowing this, it was negligence for him to go upon the track between the cars.

■■ The train crew was not negligent for failing, on a dark night, to find a negro watchman without his lantern, roaming about a lumber yard, and to warn him of the approach, on a still, silent night, disturbed by no other noises, of a switch engine with a bright headlight front and rear, pushing a string of cars on the only track in the yard, with the train crew carrying lanterns and accompanied by the usual noises of a moving train making three couplings within a few hundred feet of him. If Kennedy did not see or hear the train, he should have. One is presumed to see what they should see. We think the negligence of the deceased was the direct cause of the accident, and that defendant was without fault. If we are wrong in that, deceased was at least guilty of gross contributory negligence which continued down to the time of his injury.

The judgment of the lower court rejecting plaintiff's demands is affirmed.